RUCKMAN AND HANSEN, INC.,
Plaintiff,

v.

CONTRACTING & MATERIAL CO., Inc.,
et al., Defendants,

CONTRACTING & MATERIAL CO., Inc.,
Defendant and Third-Party Plaintiff-
Appellee,

v.

The HOME INDEMNITY COMPANY,
Third-Party Defendant-Appellant.

No. 14277.

United States Court of Appeals
Seventh Circuit.

Feb. 26, 1964.

Rehearing Denied April 2, 1964.

William M. Evans, Indianapolis, Ind., for Contracting & Material Co., Bose, Buchanan, McKinney & Evans, Indianapolis, Ind., of counsel.

R. Stanley Lawton, F. Boyd Hovde, Indianapolis, Ind., for Home Indemnity Co., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Contracting and Material Company, Inc., appellee, was awarded judgment in the amount of $31,678.43 on its third-party complaint against The Home Indemnity Company, appellant, in an action commenced in the District Court by Ruckman and Hansen, Inc., against C & M.[1] The liability of Home, asserted against it by C & M, is predicated upon Home's contract of suretyship covering performance of a contract by National Asphalt Paving Company. Home appealed.

The record discloses that R & H entered into a prime contract with the State of Indiana to construct two highway overpasses. R & H subcontracted the "common excavation" and "special borrow" items involved to C & M. The subcontract was assigned by C & M to NAPC. Home executed a surety bond with C & M as sole obligee conditioned upon performance of the subcontract by NAPC. NAPC failed to complete its contractual obligations and abandoned the project. J. Fox Construction Co. was employed by R & H to complete the work remaining to be done. R & H then brought suit against C & M alleging default in the performance of the subcontract. R & H's complaint set forth several specific items of damages totalling $19,670.92; alleged the existence of certain pending litigation, any recovery in which would be a further obligation of C & M, and alleged the existence of other unpaid bills and charges in connection with work under the subcontract. In turn, C & M filed its third-party complaint against NAPC, its assignee, for breach of the subcontract, and against Home on its performance bond. The amount of the judgment entered against Home ($31,678.43) includes the several items making up the $19,670.92 set forth in R & H's complaint against C & M (with minor adjustments not pertinent to the issues in this appeal) less a credit of $5,060.92 representing an overpayment in connection with progress payments made under the contract for work done by NAPC as reflected by progress estimates by engineers of the State Highway Department. In addition, the judgment includes amounts paid by C & M in settlement of pending litigation and payment of other outstanding claims and unpaid bills referred to in R & H's complaint, and $6,500.00 for attorney fees.

1. Contracting and Material Company, Inc., will be referred to as "C & M"; The Home Indemnity Company as "Home"; Ruckman and Hansen, Inc., as "R & H"; National Asphalt Paving Company, a joint venture comprised of the partnership of Raymond J. Walter and Eugene Downs, and Fred Beshara, individually, as "NAPC"; and J. Fox Construction Co. as "Fox".

Prior to the disposition of the third-party action a judgment in the sum of $19,431.92 had been entered in favor of R & H against C & M by consent of these two parties. This consent judgment recited that it was not to be treated:

" * * * either as being conclusive of or evidentiary of either the amount or the existence of any liability of [C & M] so far as the third party [Home is] concerned, it being the intent of this proviso to avoid the rule that a third party defendant is bound by a judgment on the original complaint."

Subsequent to that judgment C & M amended its third-party complaint to set forth specifically the items included in such judgment, which it had paid, and the additional amounts, totalling $10,-307.43, paid in connection with the discharge of other claims and unpaid bills. The amended third-party complaint also alleged the existence of certain pending litigation against R & H and C & M for damages and charges resulting from work done by NAPC under the subcontract (one of which suits was later settled by C & M for $500.00).

The cause proceeded to trial without a jury and the District Court, after making and entering findings of fact and conclusions of law, entered the judgment from which this appeal is prosecuted.

Home does not dispute that C & M paid each of the items comprising the judgment against it. Home does dispute the right of C & M to recover from Home all or any part of such items.

The main contested issues on appeal are (1) whether the progress payments made on the estimates of the State engineers constituted an overpayment or prepayment which completely released the surety; and if not (2) whether the consent judgment merged all claims and damages R & H had against C & M so as to preclude C & M from recovering from Home the $10,807.43 it expended on the additional claims and unpaid bills; (3) whether the limitation period fixed in the surety bond bars recovery of these

additional amounts; and (4) whether C & M is entitled to recover for attorneys' fees. Subsidiary issues include whether the surety is liable for tort damages resulting from the negligence of its principal and for equipment rental not paid by the principal, and whether the District Court's findings that the payment to Fox and the other items comprising the judgment entered in favor of R & H against C & M were occasioned by the default of NAPC are clearly erroneous.

From our analysis of the findings of fact and conclusions of law of the District Court, which we find are supported by substantial evidence in the record and represent the application of correct legal criteria, we conclude that each of the issues precipitated by Home's appeal must be resolved against the appellant. We proceed to state the reasons for our conclusion.

The record establishes that in remitting progress payments to NAPC, which payments C & M had received through R & H as due under the prime contract with the State based on the State's periodic estimates of quantities of the excavation and borrow work completed, C & M passed on to NAPC sums in excess of the amounts determined later to have been actually due. Home urges that under Indiana law, either overpayment or prepayment of a surety's principal by the obligee completely discharges the surety. It contends that the excesses in the remittance of progress payments absolves it completely from liability to C & M. In this connection Home relies upon Board of Commissioners of Morgan County v. Branham, 7 Cir., 57 F. 179; National Surety Company of New York v. State, 93 Ind.App. 435, 153 N.E. 421 and Detroit Fidelity & Surety Company v. Bushong, 96 Ind.App. 352, 175 N.E. 683. But in our view those cases are not apposite. Under the provisions of the contract here involved the progress payments were not final or binding and were expressly subject to correction and adjustment. The fact that the progress estimates turned out to be too high does not in our opinion, on the facts and cir-

cumstances here involved, operate to release the surety. The estimates and payments were made in accordance with the express provisions of the contract documents—errors in the estimates were expressly subject to adjustment—and there was no departure from the terms of the contract, which by its bond the surety accepted. In the cases cited by Home payments were made in violation of contract provisions to the prejudice of the surety. Branham, where the principal falsely represented half the work was completed and the owner, relying on the false representation, neglected to make the estimate required and made the overpayment, involved "a gross departure from the terms of the contract" governing the making of the payment. In National Surety there was a prepayment of retainage contrary to the terms of the contract. Bushong involved a payment to the principal at a time when nothing was due under the contract. The rule applied in those cases has no application here.

■ The excess in the progress payments was adjusted, except for $5060.92, through the application of retainage, and the District Court's finding characterizing the $5060.92 as an "overpayment" not recoverable from Home does not, on the facts here involved, either require or justify application of the rule which calls for the surety's complete discharge. There was no departure from the terms of the contract. And the errors in the progress estimates and payments have in no manner operated to the prejudice of the surety.

■ The record discloses that the consent judgment entered in favor of R & H against C & M was entered pursuant to an agreement between these two parties which reveals that the judgment was not intended to discharge C & M's liability on the remaining claims arising out of NAPC's default in performance of the subcontract. The consent judgment therefore did not effect a merger of claims precluding further recovery by R & H from C & M. Cf. Louisville, N. A. & C. Ry. Co. v. Terrell, 12 Ind.App. 328, 333, 39 N.E. 295. Consequently, C & M's payments of the remaining items were not "voluntary" payments of an obligee not recoverable from the surety.

■ C & M's third-party complaint against Home was filed before the expiration of the one year "following the date on which Principal [NAPC] ceased work on said contract" limitation period contained in Home's surety bond. The complaint of R & H against C & M was attached and C & M demanded judgment against Home "for all sums that may be adjudged against [C & M] in favor of [R & H]." Subsequent to the consent judgment entered against it, C & M filed an amended third-party complaint against Home setting forth the specific items for which payment had been made to R & H together with the additional specific claims and amounts, totalling $10,307.43, which C & M had paid, and alleging the existence of a pending suit against C & M with respect to another claim (later settled for $500.00). All of these items of damages "arose out of the conduct, transaction, or occurrence set forth * * * in the original pleading" and therefore relate back to the original third-party complaint under the express provisions of Rule 15(c) of the Federal Rules of Civil Procedure (28 U.S.C.A.). In addition, it appears that within 30 days of NAPC's default and abandonment of work on the subcontract Home was notified thereof and that C & M looked to Home for payment of all damages C & M might suffer on account of the default. And, within five months of the date NAPC "ceased work on the contract" Home was notified as to the identity and the then asserted amounts of all claims which were included in the judgment against it with the exception of the claim which was settled for $500.00. We perceive no merit in Home's contention that the limitation period of the bond precludes recovery by C & M for these payments which were in addition to those included in the consent judgment in favor of R & H. Nor are we persuaded by Home's argument that Rule 14(a) of the Federal Rules of Civil Procedure precludes recovery of these ad-

ditional payments by way of amendment of the third-party complaint because they represented no part of the adjudicated liability of C & M. The impleader device of Rule 14(a) was properly utilized. A single "group or aggregate of operative facts giving ground or occasion for judicial action" was here involved. See: 3 Moore's Federal Practice, Sec. 14.07, p. 509 (2nd Ed. 1963 Recompilation).

■ NAPC as assignee of C & M became obligated to perform the covenants and conditions of the subcontract. C & M, and NAPC as its assignee, were obligated by the express provisions of the subcontract to:

" * * * indemnify the Prime Contractor and the [State] against, and save them harmless from, any and all loss, damage, costs, expenses, and attorneys' fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this contract. If it shall become necessary for the Prime Contractor by action to enforce the collection of any sum or sums of money due under this contract, the Subcontractor specifically agrees to pay to the Prime Contractor all necessary expenses, including reasonable attorneys' fees that the Prime Contractor may incur in the institution or prosecution of any such action."

Upon payment by C & M of NAPC's obligations arising out of the subcontract C & M became subrogated to R & H's right to costs and reasonable attorneys' fees and entitled to assert such right against NAPC and Home. In Kamarta v. Hayes Freight Lines, Inc., 123 Ind. App. 222, 230–231, 108 N.E.2d 723, it is pointed out that the right of subrogation is founded upon principles of equity and justice and:

" * * * includes every instance in which one party, not a mere volunteer, pays a debt for another, primarily liable, which in good conscience should have been paid by the latter. [Citations.]

"Where one pays a debt which could not properly be called his own, but which it was his interest to pay, or which he might have been compelled to pay for another, the law subrogates him to all the rights of the creditor. Spray v. Rodman [et al.] 1873, 43 Ind. 225.

"Here the appellee paid a debt due to a third person, for the payment of which another was primarily liable, under compulsion of saving itself from loss, and not as a mere volunteer."

The attorney fees awarded C & M as a part of its damages were incurred by C & M on account of the breach of the subcontract by NAPC and became the obligation of Home, upon the failure of NAPC to indemnify and save harmless C & M from such costs, as required by the equitable principle of subrogation under the circumstances here involved.

The subcontract expressly provides that the subcontractor indemnifies against "any and all claims, suits, or liability for injuries to property, injuries to persons, including death, and from any other claims, suits, or liability on account of any act or omission of the Subcontractor or any of his officers, agents, employees or servants" and subcontractor is obligated to furnish "all materials, labor, tools, equipment and supplies". Thus the $500.00 expended in settlement of the property damage tort claim and the rental charge for equipment were within the class of obligations embraced within the subcontract and covered by Home's performance bond. In so far as the allowance of these items as damages, and the like allowance of the payment to Fox and the other items comprising the consent judgment, are based on factual considerations we are convinced from our examination of the record that the District Court's factual findings are supported by substantial evidence and reasonable inferences to be drawn therefrom. There is no justification for disturbing any of those findings as clearly erroneous or without evidentiary support. We likewise find no error in the court's legal

conclusions with respect to these items. The evidentiary facts, measured by the express provisions of the contract documents and applicable law, demonstrate the soundness of the court's conclusion that all of the items involved constitute proper elements of damages occasioned by the default of NAPC. We are of the view that it would serve no useful purpose to extend the scope of this opinion to embrace a detailed discussion of each item and the contentions advanced by appellant concerning the same. Suffice it to say that we have examined the record, including the provisions of the contract documents and specifications, considered the authorities relied upon by appellant and appraised each of the arguments it advances. We find nothing which would warrant a reversal of the judgment entered against the appellant or its modification in any respect.

The judgment order entered by the District Court is in three distinct parts: (1) that C & M recover from Home and Raymond J. Walter, or either of them, the sum of $31,678.43 and costs; (2) that C & M recover from Walter the additional sum of $5060.92; and (3) that Home as cross-claimant recover $40,-303.43 from its cross-defendant Walter subject to reduction by any amount Walter pays in satisfaction of part (1) of the judgment. Home's appeal herein is limited by the language of its notice of appeal to "the judgment entered in this action on May 10, 1963, against said third party defendant [Home] in the amount of Thirty-one Thousand Six Hundred Seventy-eight Dollars and Forty-three Cents ($31,678.43), * * *"

We therefor do not reach or consider the contention advanced by Home that the District Court erred in not granting judgment in Home's favor against Fred Beshara and Eugene Downs, named along with Walters as cross-defendants in Home's third-party defendant cross-claim, but with respect to whom the court found it lacked jurisdiction of the person. Unlike the situation in Hawkeye-Security Insurance Company v. Schulte, 7 Cir., 302 F.2d 174, the notice of appeal here is not such that "[t]he intention to appeal from the judgment as a whole may be properly inferred from the notice, and appellee makes no claim of having been misled". Here, by its terms, the notice of appeal limits the appeal to the part set out as may be done under Rule 73(b) of the Federal Rules of Civil Procedure. Moreover, neither Downs nor Beshara entered appearances in the District Court, the record here does not reflect that they were in any manner notified of this appeal, and they have not appeared or been represented herein. Under the circumstances their rights will not be adjudicated *in absentia*.

The judgment order of the District Court is affirmed.

Affirmed.