# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 00-6056 WM
No. 00-6060 WM

_____

In re:   Kristy Ann Maurer and     *
John Philip Maurer,     *
    *
Debtors.     *
_____     *
    *
Linda R. Burt,     *
      Plaintiff-Appellee,     *
    *
    *
        v.     *
    *    Appeals from the United States
Kristy Ann Maurer,     *    Bankruptcy Court for the
      Defendant-Appellant,     *    Western District of Missouri
_____     *
    *
Linda R. Burt,     *
      Cross-Appellant,     *
    *
        v.     *
    *
Kristy Ann Maurer,     *
      Cross-Appellee.     *

_____

Submitted: November 9, 2000
Filed: December 22, 2000

_____

Before WILLIAM A. HILL, SCHERMER, and DREHER, Bankruptcy Judges.

_____

WILLIAM A. HILL, Bankruptcy Judge.

Debtor Maurer appeals from the bankruptcy court's determination that the state court fraud judgment against her is nondischargeable. Burt cross-appeals from the bankruptcy court's refusal to award her the attorney fees she incurred in prosecuting the dischargeability proceeding below. We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

BACKGROUND

In 1983, Burt entered into a purchase agreement with Stenograph Corporation for the purchase of a Stenograph Cimarron I Editing Station ("Cimarron I"). The purchase agreement provided for 84 monthly payments of $285.00 and specifically stated that "[u]pon default, Purchaser shall be liable for all costs, including attorneys' fees, incurred in collection and enforcement of Purchaser's obligations and duties hereunder . . ." The purchase agreement was subsequently assigned to Sanwa Business Credit Corporation ("Sanwa") for collection.

In mid-1987, Burt and Maurer were both working independently as court reporters in the Kansas City area. At that time, Maurer purchased the Cimarron I from Burt by orally agreeing to assume the remaining payments that were owed to Sanwa. Subsequently, Maurer made the payments for August and September of 1987 but thereafter defaulted on her monthly payment obligation. Sanwa looked to Burt for payment, and beginning with the payment for January 1988, Burt once again began making payments on the Cimarron I.

In February 1988, Burt and Maurer entered into a new written agreement. The agreement was signed by Maurer and provides as follows:

> I hereby agree that I am responsible for and am assuming all payments to Sanwa Leasing Corporation (including late charges, if applicable) on the Stenograph Cimarron I Editing Station currently under a lease-to-own agreement between Sanwa Leasing Corporation and Linda R. Burt. I further understand that there is a balloon payment due at the end of the existing lease agreement in the approximate amount of $1,225.00, which will buy out said lease, and I agree to make said payment at the end of the lease period if I wish to have possession of said editing station at the end of the lease period. If I do not pay the balloon payment at the end of the lease period, possession of said editing station shall revert to Sanwa Leasing Corporation, pursuant the existing lease agreement. At the time that all payments are made, I will assume ownership of said editing station and Linda R.

2

Burt will relinquish all ownership interest in said editing station, and no further payments shall be due to Linda R. Burt and/or Sanwa Leasing Corporation.

The above agreement was backdated to October 1, 1987, based on the fact that Maurer had already made the monthly payments for August and September of 1987 pursuant to the parties' prior oral agreement. After signing the written agreement, however, Maurer continued to default on her monthly payment obligation.

On June 18, 1993, Burt filed a breach of contract action against Maurer in Johnson County District Court for the State of Kansas, and a court trial was conducted on February 13 and 14, 1995. In her testimony at trial, Maurer admitted that she had no intention of performing under the written agreement of February 1988 at the time she signed it. Burt then moved to amend her complaint to allege fraud, and the motion was granted. On June 8, 1995, the state trial court issued its Journal Entry of Judgment which contained the following findings:

15. Effective August 1, 1987, defendant Kristy Maurer orally agreed to assume the responsibility of plaintiff Linda R. Burt for payments on the Stenograph Cimarron I Editing Station, thereby purchasing that editing station from plaintiff Linda R. Burt by agreeing to reimburse Linda R. Burt for any payments, late charges or other expenses incurred by her in fulfilling her contract with Sanwa Business Credit Corporation. Defendant transported that machine from its location at the Obermaier Office to her home on Wallace in Kansas City, Missouri, and eventually to her business office at 1870 City Center Square, 1100 Main, Kansas City, Missouri.

* * *

18. In February, 1988, the parties entered into a new written agreement to the effect that Kristy Maurer would assume Linda Burt's liability to Sanwa, which agreement is attached as Exhibit "A" to plaintiff's petition, which was drafted by plaintiff Linda R. Burt on her computer as defendant Kristy Maurer stood behind her over her right shoulder and agreed with plaintiff Linda R. Burt with respect to the precise wording of the document in question. The document in question was backdated to October 1, 1987, based upon the fact that defendant had paid only for the months of August and September pursuant to the parties oral agreement. After the parties agreed to the wording of the document in question, plaintiff Linda R. Burt printed two originals of that document off on Burt, Burmeister & Associates stationery and provided them to defendant Kristy Maurer, who affixed her signature to the document on top of the printer while plaintiff Linda R. Burt watched her sign it, thereafter leaving the documents with Ms. Burt.

* * *

3

20. The agreement in question is adequately supported by consideration. Since the parties before the Court reduced their agreement to a written contract, consideration is presumed as a matter of law, and it is defendant's burden to prove lack of consideration, . . . a burden which defendant has failed to carry.

\* \* \*

21. Linda R. Burt, despite not having signed the agreement in question, was a party to the agreement by virtue of the fact that it concerned assumption of a debt she owed and the fact that she performed her obligation under the agreement by providing the equipment in question to defendant Kristy Maurer, who thereby assented to the agreement. A valid written contract, signed by one party only, but fully recognized and acted upon by both parties, is binding in the sate of Kansas. Doman Hunting & Fishing Association v. Doman, 159 Kan. 439, 446, 155 P.2d 438 (1945); Sentney v. Hutchinson Interurban Ry. Co., 90 Kan. 610, 612-23, 135 P. 678 (1913).

\* \* \*

25. . . . By agreeing to assume the contract of Linda Burt with stenograph which was subsequently assigned for collection purposes to Sanwa Business Credit Corporation, plaintiff (sic) Kristy Maurer adopted that written contract by expressly referring to it in Exhibit "A," rendering the five-year statute of limitations provided in K.S.A. 60-511 applicable.

\* \* \*

29. This Court hereby finds and holds that plaintiff has proven a case of fraud by clear and convincing evidence. . . . [Maurer's] testimony that she did not inform Linda Burt that she did not intend to perform the agreement when made and that she fully expected Linda Burt to rely upon her promise to Ms. Burt's detriment, lead the Court to conclude that her implied statement of present intent to inform (sic) was made with "intent to deceive or recklessly . . . with disregard for the truth." Finally, Linda R. Burt's testimony that she relied upon Ms. Maurer's promise in purchasing expensive new equipment while continuing to make payments on that which was subject to the parties' agreement provides clear and convincing evidence supporting justifiable, detrimental reliance upon the part of plaintiff.

\* \* \*

32. As a direct and proximate result of defendant Kristy Maurer's fraud, plaintiff Linda R. Burt was damaged in the form of continued payments of principal and late charges to Sanwa in connection with the Stenograph Cimarron I Editing Station in question commencing with the January 1, 1988, payment of $285.00 made by Ms. Burt on December 30, 1987, less $32.05 received from defendant and $143.00 received from Amy Blosser as defendant's agent or assignee, in total amount of $10,156.70, which when reduced by the $300.00 she received upon sale of the machine leaves plaintiff with actual damages of $9,856.70.

\* \* \*

34. Pursuant to K.S.A. 60-3702(b), this Court is allowed to consider a variety of factors in determining the amount of punitive damages to be imposed upon defendant

4

Maurer as damages in connection with plaintiff's action for fraud. . . . Defendant's misconduct was clearly profitable to her; it would have relieved her from the obligation to pay nearly $10,000.00 absent this lawsuit. K.S.A. 60-3702(b)(3). . . .

Maurer appealed the trial court's judgment to the Kansas Court of Appeals, alleging, inter alia, that there was insufficient evidence to support a finding of fraud. However, the trial court's finding of fraud was affirmed by the state appellate court. Maurer then filed a chapter 7 bankruptcy petition, and Burt commenced an adversary proceeding seeking a determination that the state court fraud judgment was nondischargeable. After a hearing on the issue of dischargeability, the bankruptcy court issued a memorandum opinion and order detailing its findings of fact and conclusions of law on May 4, 2000. Specifically, the bankruptcy court determined that collateral estoppel precluded relitigation of Maurer's fraud and that the state court fraud judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Maurer appeals from the bankruptcy court's determination of nondischargeability, asserting that the fraudulent conduct at issue did not result in Maurer obtaining money, property, services, or credit as required for nondischargeability under 11 U.S.C. § 523(a)(2)(A). Burt appeals from the bankruptcy court's refusal to award her the attorney fees she incurred during the adversary proceeding below.

STANDARD OF REVIEW

On appeal, we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. Fed. R. Bankr. P. 8013; Hatcher v. U. S. Trustee (In re Hatcher), 218 B.R. 441, 445 (B.A.P. 8th Cir. 1998) (citations omitted); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997); O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997).

DISCUSSION

*A. Dischargeability Under 11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

5

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

To establish fraud within the context of 11 U.S.C. § 523(a)(2)(A), the creditor must prove the following elements by a preponderance of the evidence:

1.  The debtor made a representation.
2.  The debtor knew the representation was false at the time it was made.
3.  The representation was deliberately made for the purpose of deceiving the creditor.
4.  The creditor justifiably relied on the representation.
5.  The creditor sustained the alleged loss as the proximate result of the representation having been made.

Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000); Guske v. Guske (In re Guske), 243 B.R. 359, 362 (B.A.P. 8th Cir. 2000); Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999).

In this case, the bankruptcy court ruled that collateral estoppel precluded relitigation of Maurer's fraud and that the state court fraud judgment established all the elements of fraud necessary for nondischargeability pursuant to section 523(a)(2)(A) of the Bankruptcy Code. Maurer does not take issue with either of these determinations by the bankruptcy court. Maurer's sole contention on appeal is that while there was fraud in connection with the February 1988 transaction, there was no evidence proffered of fraud in connection with the August 1987 transaction when the Cimarron I was first delivered and, therefore, no proof that Maurer obtained money, property, services, or credit as a result of her fraudulent conduct. In other words, she claims, because she already had possession of the Cimarron I when she subsequently committed fraud, she could not have obtained the property through fraud as required by section 523(a)(2)(A). See Cohen v. De La Cruz, 523 U.S. 213, 220-21, 118 S.Ct. 1212, 1217, 140 L.Ed.2d 341 (1998) ("... § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent *acquisition* of money, property, etc., ...") (italics added).

Presented with the same argument Maurer now raises on appeal, the bankruptcy court made the following observation, quoting from paragraphs 20 and 34 of the state court fraud judgment:

> [Maurer's] argument is misguided because the state court did find that property was obtained by fraud; specifically, it found that "[t]he agreement in question is adequately supported by consideration," . . . and that the fraud enabled her to avoid an obligation of "nearly $10,000."

Appellant's Appendix, pp. 5-6. We are similarly bound by the state court's findings, and those findings refute Maurer's contention. In addition to the bankruptcy court's observation, we note that paragraph 25 of the fraud judgment states that "despite not having signed the agreement in question, . . . [Burt] performed her obligation under the agreement by providing the equipment in question to defendant Kristy Maurer." This finding suggests that the consideration for the February 1988 contract was either the machine itself or a renewal of an agreement for its use, either of which would qualify as "property" within the meaning of 11 U.S.C. § 523(a)(2). Accordingly, Maurer's argument that she obtained nothing as a result of her fraudulent conduct must fail, and we affirm the bankruptcy court's determination that 11 U.S.C. § 523(a)(2)(A) excepts the state fraud judgment from discharge. Either Maurer obtained the property in a new transaction which was tainted by fraud, or alternatively, what happened in February 1988 was an extension or renewal of credit originally granted, and either would suffice to support the decision of the bankruptcy judge.

### B. Attorney Fees

Burt contends that she should be allowed to recover the attorney fees she incurred prosecuting the dischargeability proceeding in bankruptcy court. Ordinarily, absent a specific statutory or contractual provision to the contrary, such fees are not recoverable. Williams v. Kemp (In re Kemp), 242 B.R. 178, 183 (B.A.P. 8th Cir. 1999), aff'd, __ F.3d __, 2000 WL 1730882 (8th Cir. 2000). See also Alport v. Ritter (In re Alport), 144 F.3d 1163, 1168 (8th Cir. 1998) (attorney fees awarded on basis of contractual provision).

Burt first contends that the bankruptcy court failed to give fair consideration to her attorney fee argument when she presented it below. We find that contention to be wholly without merit. Burt submitted a letter to the bankruptcy court detailing her argument for attorney fees, and nothing in the record before us indicates that the bankruptcy court failed to read and consider Burt's letter before denying Burt's attorney fee request.

Next, because her February 1988 contract with Maurer contains no attorney fee provision, Burt argues that she may recover her attorney fees based on a provision[1] appearing in another contract–the contract that she entered in 1983 when she originally purchased the Cimarron I from Stenograph Corporation.[2] According to Burt, Maurer assumed Burt's obligation under the 1983 purchase agreement by virtue of the contract Maurer signed in February 1988. Because Burt paid the debt that Maurer allegedly assumed, Burt claims to be subrogated to the rights of Sanwa under the 1983 purchase agreement and that she may enforce the attorney fees provision in that agreement against Maurer. In support of her argument, Burt relies on the following provision from the Restatement (Second) of Contracts:

> (1) Where an intended beneficiary has an enforceable claim against the promisee, he can obtain a judgment or judgments against either the promisee or the promisor or both based on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of a judgment thereon, satisfies to that extent the other duty or judgment, subject to the promisee's right of subrogation.

> (2) To the extent that the claim of an intended beneficiary is satisfied from assets of the promisee, the promisee has a right of reimbursement from the promisor, which may be enforced directly and also, if the beneficiary's claim is fully satisfied, by subrogation to the claim of the beneficiary against the promisor, and to any judgment thereon and to any security therefor.

Restatement (Second) of Contracts § 310 (1981).

In this case, the February 1988 contract signed by Maurer may be accurately characterized as a contract for the benefit of a third party. Under the February 1988 contract, Maurer agreed to pay Burt's remaining debt to Sanwa. Accordingly, Maurer was the promisor, Burt was the promisee, and Sanwa was the intended third party beneficiary of Maurer's promise to pay Burt's debt. See generally Restatement (Second) of Contracts § 302(1)(a) (1981); Klein v. Jones, 980 F.2d 521, 526-27 (8th Cir. 1992). Under these facts, Sanwa may also be referred to as a "creditor beneficiary," Restatement (Second) of Contracts

---

[1] The attorney fees provision appears as follows: "[u]pon default, Purchaser shall be liable for all costs, including attorneys' fees, incurred in collection and enforcement of Purchaser's obligations and duties hereunder."

[2] This contract was later assigned to Sanwa.

§ 302 cmt. b (1981), and in the absence of a novation, Burt remained secondarily liable on the debt to Sanwa as surety for Maurer, the primary obligor. Restatement (Second) of Contracts § 310 cmt. a (1981).

Paragraph 25 of the state trial court findings specifically states that Maurer "agree[d] to assume the contract of Linda Burt with stenograph which was subsequently assigned for collection purposes to Sanwa" and that Maurer "adopted that written contract by expressly referring to it" in the February 1988 contract she entered into with Burt. The finding that an assumption actually occurred was affirmed on appeal. Thus, it cannot be disputed that Maurer actually assumed Burt's obligations under the contract with Stenograph Corporation that was later assigned to Sanwa. Moreover, where a promisor assumes the existing contract between the promisee and the creditor beneficiary, the creditor beneficiary may enforce the provisions of that contract against the promisor, including a provision for the recovery of attorney fees. See C.R. Anthony Co. v. Wal-Mart Properties, Inc., 54 F.3d 514, 522 (8th Cir. 1995) (where sublessee assumed the lessee's obligations under the parent lease, lessor was creditor beneficiary able to enforce the attorney fees provision in the parent lease against the sublessee). Thus, because Maurer assumed the existing contract between Burt and Sanwa, Sanwa had the right to enforce that contract, including the attorney fees provision, against Maurer.

Because she paid the debt to Sanwa, Burt has a right of reimbursement from Maurer which may be enforced directly or by subrogation to the rights of the creditor beneficiary. Restatement (Second) of Contracts § 310(2) (1981). Generally, a surety may enforce the rights of a creditor beneficiary "only to the extent necessary to obtain reimbursement for the amount which the surety has actually paid." 83 C.J.S. *Subrogation* § 66 (2000). See, e.g., Memphis & L. R.R. Co. v. Dow, 120 U.S. 287, 301-02, 7 S.Ct. 482, 489, 30 L.Ed. 595 (1887). However, this general rule is largely attributable to the fact that the majority of subrogation cases deal with situations where the subrogor had no right to recover attorney fees and, therefore, the subrogee standing in the subrogor's shoes similarly had no such right. See, e.g., Williams v. Johnston, 442 P.2d 178, 186 (Idaho 1968); Texas Land & Loan Co. v. Blalock, 13 S.W. 12, 14 (Tex. 1890). Such cases are inapplicable to the case at bar given the fact that Sanwa had the right to recover attorney fees. By subrogation, Burt has obtained that right and may assert it against Maurer.

In Ruckman and Hansen, Inc. v. Contracting & Material Co., 328 F.2d 744 (7th Cir. 1964), a subrogee was allowed to recover its attorney fees in addition to the actual amount it had paid to satisfy the obligation at issue. Id. at 748. Another court summarized the facts in Ruckman as follows:

[A] contractor gave a subcontract to a subcontractor, C & M, on a highway project. C & M then assigned the subcontract to a paving company, NAPC, who obtained a performance bond from an insurance company, Home. NAPC did not do the job, and the contractor had to hire another company to finish the work. The contractor then sued C & M, and C & M filed a third party complaint against NAPC and Home. C & M settled with the contractor. The Seventh Circuit held that, by paying NAPC's obligations under the [sub]contract, C & M had become subrogated to the contractor's claims against NAPC under the subcontract, including the contractor's right to costs and attorney fees.

Monarch Insurance Co. of Ohio v. Siegel, 634 F.Supp. 1252, 1262 (N.D.Ind. 1986). In upholding the award of attorney fees to the subrogee, the Ruckman court said, "[u]pon payment by C & M of NAPC's obligations arising out of the subcontract C & M became subrogated to [the contractor's] right to costs and reasonable attorneys' fees and entitled to assert such right against NAPC and Home." Ruckman, 328 F.2d at 748.

Thus, Ruckman is directly on point and a similar result should obtain in the case at bar. Accordingly, we reverse the bankruptcy court's refusal to award Burt the attorney fees she incurred prosecuting the dischargeability proceeding below.

## CONCLUSION

For the reasons discussed, the bankruptcy court's decision with respect to dischargeability is affirmed, and its decision with respect to attorney fees is reversed. We remand the case for a proper determination of fees to be awarded Burt for prosecuting the dischargeability proceeding below.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.