In re David FUGET, Mary
Fuget, Debtors.

Verda Chapman, Plaintiff,

v.

David Fuget, Mary Fuget, Defendants.

Bankruptcy No. 05–01764.
Adversary No. 05–30059.

United States Bankruptcy Court,
S.D. Iowa.

March 14, 2006.

William J. Hargrafen, Muscatine, IA, for Debtors.

## ORDER RE: COMPLAINT TO DE-TERMINE DISCHARGEABIL-ITY OF INDEBTEDNESS

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned for trial on February 28, 2006 pursuant to assignment. Attorney John Wunder represented Plaintiff Verda Chapman. Debtors David and Mary Fuget appeared pro se. After hearing evidence and arguments, the Court took this matter under advisement. The time for filing briefs has passed, and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O).

### STATEMENT OF THE CASE

Plaintiff asserts that Debtor fraudulently acquired over $50,000.00 in cash, two automobiles, and her home from her. Plaintiff asks that the debt be determined to be $128,000.00 and that this amount be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). Debtors deny all allegations made by Plaintiff.

### FINDINGS OF FACT

Debtors asserted their Fifth Amendment rights against self incrimination and did not testify at this hearing. Defendants submitted briefs which are factual and outside the record.

In 1999, after the death of her husband, Plaintiff owned a home located at 611 Orange Street, Muscatine, Iowa, free of any debt or liens. On May 9, 2001 Plaintiff executed a Quitclaim Deed in favor of Debtor David Fuget. On August 10, 2001, Plaintiff executed another Quitclaim Deed thereby extinguishing her life estate in favor of David Fuget for ten dollars. On September 25, 2002, Mr. Fuget executed a Quitclaim Deed conveying the home to himself and his spouse, also a Debtor in this case. Debtors used the house as collateral and obtained a real estate mortgage in the amount of $63,000. Debtors also listed the house on 611 Orange Street as a rental property with the City of Muscatine's Municipal Housing Agency (HUD). Debtors arranged for Plaintiff and her daughter to remain in the house as tenants, receiving rent from Plaintiff on a house she had previously owned free and clear. On March 21, 2005, the Muscatine HUD terminated the Housing Assistance Payment to Debtor for violations by Debtors of their contract with HUD. On May 23, 2005 the home on 611 Orange was foreclosed upon and was sold in a Sheriff's Sale on September 29, 2005.

On August 29, 2000 Plaintiff wrote a check for $3,875.82. According to Plaintiff's check registry, the check was given to Debtors to purchase a green Chevy, despite the fact that Plaintiff cannot drive. Plaintiff issued another check to Debtors

for the purchase of a van on August 31, 2000 in the amount of $4,050.00. Plaintiff issued a third check to Debtors for the purchase of a Mustang on October 1, 2000 in the amount of $1,900. Debtors claim the money for the van was stolen. They further claim Plaintiff derived benefit from the Chevy as it was used to transport her son, who uses a wheelchair. Plaintiff responds that Debtor David Fuget fraudulently registered the vehicles in his name, that she paid for upkeep for the vehicles, and that Debtors only transported her son a couple of times.

Plaintiff alleges that Debtors fraudulently convinced Plaintiff to allow them access to her checking account, and Debtors proceeded to take advantage of Plaintiff's lack of fiscal understanding to defraud Plaintiff of over $50,000.00 in cash. Debtor David Fuget responds that he helped Plaintiff manage her finances, and he wrote checks on the direction of Plaintiff.

Plaintiff has a very limited ability to read or write, and she does not understand the concept of money; she is unable to drive. Plaintiff's only income consists of Social Security payments in the amount of $707.00 per month. Plaintiff lives with her daughter who also has a very limited ability to read and write. Plaintiff's daughter's only source of income consists of Social Security payments in the amount of $603.00 per month. In approximately December, 2004, after Muscatine Community Services (MCS) received a referral from Plaintiff's HUD worker, their finances began to be managed by MCS. MCS provides a trust specialist who acts as a guardian/conservator for adults who are incapable of living by themselves without significant help.

## CONCLUSIONS OF LAW

■ Plaintiff asserts Debtors fraudulently transferred cash and property in the amount of $128,000.00 from Plaintiff, and this amount should be excepted from discharge under § 523(a)(2)(A) (false pretenses), (a)(4)(fraud or defalcation), and (a)(6)(wilful and malicious injury). Section 523(a) states, in pertinent part:

(a) A discharge under 727 of this title does not discharge an individual debtor from any debt

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of anther entity.

11 U.S.C. §§ 523(a)(2)(A), (a)(4), (a)(6) (2005). Plaintiff has the burden of proving the elements of a claim under § 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### § 523(a)(2)(A)

■ Section 523(a)(2)(A) excepts a debt from discharge if it is obtained by "false pretenses, a false representation, or actual fraud." Five elements must be satisfied before a debt will be excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied

on the representations, *Field v. Mans,* 516 U.S. 59, 72, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir. 1987).

■ Additionally, § 523(a)(2) has been found to require that the debt arise from the debtor's fraudulent acquisition of money, property, services or credit, or that the debtor obtain some benefit through the fraud or misrepresentation. *In re Maurer,* 256 B.R. 495, 500 (8th Cir.BAP 2000); *In re Bonefas,* 41 B.R. 74, 77 (Bankr. N.D.Iowa 1984) ("The initial question to be answered for a § 523(a)(2) dischargeability complaint is whether the debtor actually obtained any money, property, services or an extension, renewal or refinance of credit.")

■ The first element requires that the debtor made false representations. Plaintiff presented evidence which showed that Debtors convinced her that they would advise her and protect her best interests. Instead, Plaintiff claims that Debtors caused Plaintiff to deed her house to them for no consideration. Plaintiff presented evidence which demonstrated that Debtors knew Plaintiff had a very limited ability to read, to write, and to comprehend financial information. Evidence was also presented which showed that Plaintiff relied on Debtors' instructions and signed whatever documents she was told to sign.

Element two requires that the debtor knew the representations were false at the time they were made. Plaintiff asserts that Debtors had no intention of looking after her best interests. Debtors persuaded Plaintiff to release her life estate to her property, thereby losing all rights to her home. Evidence was also presented which showed that Debtor David Fuget convinced Plaintiff to give him large amounts of cash without any appreciable benefit to Plaintiff.

The third element requires that the debtor made the representations with the intention and purpose of deceiving the creditor. Plaintiff claims that Debtors took advantage of her inability to read and her inability to comprehend financial transactions when they convinced her to obtain credit cards and a loan, to give Debtors her home, and to give Debtors her money.

Element four requires the creditor justifiably relied on the representations. Plaintiff claims that Debtor took advantage of her inability to manage money and convinced her that Debtors would manage her finances for her and look after her best interests. Again, Plaintiff presented evidence to show that Debtor David Fuget took Plaintiff to various appointments and told her to sign legal documents which he knew she did not understand.

Section 523(a)(2) also requires that Debtor obtained a benefit from the misrepresentation. Plaintiff claims Debtor obtained approximately $128,000.00 from Plaintiff in the form of money, cars, credit card purchases, a loan, and the mortgage on her home.

■ Debtors claimed their Fifth Amendment Privilege against self incrimination and did not present any evidence to the Court. The Fifth Amendment allows the trier of fact to make adverse inferences when a party in a civil suit refuses to testify and remains silent. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). This proceeding is a civil proceeding. As such, this Court is permitted to draw adverse inferences from Debtors' silence. Since Debtors did not present any evidence to refute Plaintiff's allegations, this Court concludes that Plaintiff has proven the elements of

§ 523(a)(2) by a preponderance of the evidence.

## § 523(a)(4)

Under § 523(a)(4), a debt can be excepted from discharge for embezzlement. Embezzlement is "the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Phillips*, 882 F.2d 302, 304 (8th Cir.1989). In order to prove embezzlement, Plaintiff must show that (1) Debtor was entrusted with property or lawfully came into possession of property of another; (2) Debtor was under a prior restraint, whether written or verbal, as to the use of the property; and (3) the terms of restraint were violated by Debtor's use of the property. *In re Belfry*, 862 F.2d 661, 663 (8th Cir.1988). Implicit in a claim of "embezzlement" under § 523(a)(4) is a degree of fraudulent intent. *In re Montgomery*, 236 B.R. 914, 923 (Bankr.D.N.D. 1999); *In re Moller*, 2005 WL 1200916, *2 (Bankr.N.D.Iowa May 16, 2005).

Plaintiff presented evidence to show that Debtors were entrusted with her home and her finances. However, no evidence was presented to show that Debtors were under a verbal or written prior restraint. Plaintiff has failed to prove the elements of § 523(a)(4) by a preponderance of the evidence.

## § 523(a)(6)

Section 523(a)(6) provides that debts for "willful and malicious injury by the debtor to another entity" can be excepted from discharge. 11 U.S.C. § 523(a)(6). "Willful" and "malicious" are two separate elements and each must be proven by Plaintiff in order to receive an exception to discharge. *In re Scarborough*, 171 F.3d 638, 641 (8th Cir.1999). The "willful" element of § 523(a)(6) requires Plaintiff to show that Debtor intended the injury, not that the deliberate or intentional act lead to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Reckless or negligent conduct is not sufficient. *Id.* at 62, 118 S.Ct. 974.

Plaintiff presented evidence which shows that Debtors intended to sever all of Plaintiff's rights to her home. David Fuget took Plaintiff to see an attorney, who prepared the original Quitclaim Deed dated May 9, 2001. The first deed retained a life estate for Plaintiff and her children. On August 10, 2001, at Mr. Fuget's direction, Plaintiff and her children executed another Quitclaim Deed which extinguished their life estates in Plaintiff's home. In October 2002, David Fuget executed a Quitclaim Deed conveying the house to himself and his spouse. In December 2002, Debtors enrolled Plaintiff in Muscatine's HUD program, thereby renting Plaintiff's home to her and receiving rent from both Plaintiff and from HUD. Debtors subsequently borrowed money, using Plaintiff's home as collateral. Debtors defaulted on the loan, and Plaintiff's home was sold in a sheriff's sale on September 6, 2005.

The Eighth Circuit has defined "malicious" as

[C]onduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from mere legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice, absent some additional aggravated circumstances. The conduct must be targeted at the creditor in the sense that the conduct is certain or almost certain to cause financial harm.

*In re Long*, 774 F.2d 875, 881 (8th Cir.1985)(internal citations omitted); *In re Nangle*, 274 F.3d 481, 484 (8th Cir.2001).

No evidence was presented to show the presence of "aggravated circumstances." Debtors' target was Ms. Chapman's money, not Ms. Chapman herself. Plaintiff has not demonstrated that Debtors acted maliciously within the meaning of § 523(a)(6) and has not proven the elements of § 523(a)(6) by a preponderance of the evidence.

## ANALYSIS

Plaintiff has established her claim of fraud under 11 U.S.C. § 523(a)(2)(A) by a preponderance of evidence. Defendants elected to invoke their fifth amendment rights in this case. The Defendants submitted briefs which are, in effect, talking affidavits which attempt to rebut some of Plaintiff's claims. These comments are outside the record and are not considered evidence. The Court is entitled and elects to use Defendants' invocation of the fifth amendment as a presumption against them.

The Court finds Plaintiff's evidence compelling that David Fuget and, to a lesser degree, Mary Fuget carried out a course of conduct which systematically and completely defrauded Plaintiff out of almost every asset which she owned after her husband's death. Plaintiff has established each element by a preponderance of the evidence and has established damages of $128,000 also by a preponderance of the evidence.

**WHEREFORE,** Plaintiff has proven the elements of § 523(a)(2)(A) by a preponderance of the evidence.

**FURTHER,** Plaintiff has not proven the elements of § 523(a)(4) or § 523(a)(6) by a preponderance of the evidence.

**FURTHER,** Plaintiff's Complaint to Determine Dischargeability of Indebtedness is GRANTED.

**FURTHER,** Debtors defrauded Plaintiff of $128,000.00 which is excepted from discharge under § 523(a)(2)(A).

**FURTHER,** judgment shall enter in favor of Plaintiff, Verda Chapman, and against Defendants David Fuget and Mary Fuget, jointly and severally in the amount of $128,000.00.